**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
RITE-AID CORPORATION, et al.,

                Plaintiffs,

      - against -

AMERICAN EXPRESS TRAVEL RELATED
SERVICES COMPANY, INC., et al.,
                Defendants.
-----------------------------------------------------------X
-----------------------------------------------------------X
CVS PHARMACY, INC.,

                Plaintiff,

      - against -

AMERICAN EXPRESS TRAVEL RELATED
SERVICES COMPANY, INC., et al.,
                Defendants.
-----------------------------------------------------------X
-----------------------------------------------------------X
WALGREEN CO.,

                Plaintiff,

      - against -

AMERICAN EXPRESS TRAVEL RELATED
SERVICES COMPANY, INC., et al.,
                Defendants.
-----------------------------------------------------------X
-----------------------------------------------------------X
BI-LO, LLC,

                Plaintiff,

      - against -

AMERICAN EXPRESS TRAVEL RELATED
SERVICES COMPANY, INC., et al.,
                Defendants.
-----------------------------------------------------------X

**ORDER**

CV 08-2315 (JG) (JO)

**ORDER**

CV 08-2316 (JG) (JO)

**ORDER**

CV 08-2317 (JG) (JO)

**ORDER**

CV 08-2380 (JG) (JO)

```
-----------------------------------------------------------X
H.E. BUTT GROCERY COMPANY,
                              Plaintiff,
                                                                    ORDER
         - against -
                                                                    CV 08-2406 (JG) (JO)
AMERICAN EXPRESS TRAVEL RELATED
SERVICES COMPANY, INC., et al.,
                              Defendants.
-----------------------------------------------------------X
```

**JAMES ORENSTEIN, Magistrate Judge:**

Each plaintiff in the cases captioned above has filed a complaint against defendants American Express Travel Related Services Company, Inc. and American Express Company (collectively "American Express"). In completing the Civil Cover Sheet that the Clerk's office requires to be filed along with any new complaint, each plaintiff asserted that the instant litigation is "related" for purposes of this court's local rules to a group of pending actions collectively styled *In re Payment Interchange Fee and Merchant Discount Antitrust Litigation*, 05-MD-1720 (JG) (JO) (the "*Interchange*" litigation). Based on that designation, the Clerk assigned each of the new cases to the Honorable John Gleeson, United States District Judge as presiding judge, and to me for pretrial supervision. I ordered the plaintiffs to show cause why I should not direct the Clerk to reassign the cases to judges selected at random. Having considered the plaintiffs' submission as well as the response from American Express, I now determine, for the reasons set forth below, that the new cases are not sufficiently related to the *Interchange* litigation to warrant non-random assignment, but that they are related to one another other within the meaning of the local rules. I therefore respectfully direct the Clerk to reassign all of the captioned cases to a single district judge and a single magistrate judge, each selected at random.

A.   Background

When a plaintiff files a new civil lawsuit in this court, the Clerk requires the plaintiff's counsel to provide certain information about the case in a "Civil Cover Sheet." In particular, the form requires counsel to list any related cases. However, as I noted in my earlier order to show cause, the available instructions for providing such information offer no guidance as to the circumstances in which cases should be considered related. *See* DE 6 at 2.

A local rule of this court does provide some such guidance: "A case is 'related' to another ... when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial savings of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Loc. Civ. R. 50.3(a). The same rule provides a non-exhaustive list of examples: a new case is considered related to another earlier or pending action if it "(A) relates to property involved in an earlier or pending suit, or (B) involves the same factual issue or grows out of the same transaction as does a pending suit, or (C) involves the validity or infringement of a patent already in suit in a prior case." Loc. Civ. R. 50.3(b).

As its docket number indicates, the *Interchange* litigation has been assigned to Judge Gleeson as the presiding district judge, and pretrial matters in the case have been referred to me pursuant to Local Civil Rule 72.2(a). In characterizing the new cases as related to the *Interchange* litigation, the plaintiffs in the newly-filed cases (collectively, for ease of reference, the "AmEx Case Plaintiffs") assert only that assigning these new cases to Judge Gleeson and to me will promote judicial economy because we have already become familiar with the factual and legal issues of the latter actions. Docket Entry ("DE") 11 (AmEx Case Plaintiffs' joint

memorandum in response to order to show cause) ("Memo.") at 2. They describe the claims in the instant actions as being "virtually the same as" those brought in the *Interchange* litigation. *Id*. In support of that assertion, the AmEx Case Plaintiffs identify fifteen issues of fact and law that they claim are common to both sets of cases, and note that Judge Gleeson and I, in dealing with such matters in the *Interchange* litigation, have consequently developed an understanding of the payment card industry that our colleagues presumably lack. *See id*. at 10-11.

American Express responds that the plaintiffs' interpretation improperly broadens the scope of the related-case rule, and creates a relatedness standard so general that "any antitrust case filed against any market participant in the payments industry" could be related to the *Interchange* litigation. DE 17 at 2 (American Express's Response to Order to Show Cause) ("Opp."). It adds that the plaintiffs conflate two distinct concepts: the "similarity of *facts*" that can render two cases related under Rule 50.3(a) and the rather broader "similarity of *factual issues*" upon which the AmEx Case Plaintiffs rely. *Id*. at 3-4. As American Express observes, cases can share similar factual issues even if they do not share the same facts. *Id*. Moreover, American Express argues, the plaintiffs' broad interpretation of relatedness "would necessarily result in the jurists of this District becoming specialists in the industries covered by their cases[.]" *Id*. at 4. Finally, American Express contends that the new cases are not related to the *Interchange* litigation under the local rule not only because the defendants are different, but also because American Express's market position, business model, and merchant rules distinguish it from the defendants in the *Interchange* litigation. *Id*. at 5-8. Because these factual differences transcend the similarities of legal issues that concededly exist "at a highly generalized level," American Express asks that the new cases be reassigned. *Id*. at 12-13.

4

B. <u>Discussion</u>

As a threshold matter, I note that the local rules of this court were "'adopted for the internal management of the case load of the court'" and that they do not "'vest any rights in litigants or their attorneys....'" *United States v. Astra Motor Cars*, 352 F. Supp. 2d 370, 372 (E.D.N.Y. 2005) (quoting preamble to Guidelines for the Division of Business Among District Judges, Eastern District). They "'are not intended to give the parties a right to litigate where a particular case will be tried, but merely provide the guidelines by which the Eastern District administratively handles and assigns its cases.'" *Id.* (quoting *United States v. Garces*, 849 F. Supp. 852, 861 (E.D.N.Y. 1994)). I also note, and the parties do not disagree, that the circumstances here do not fit any of the three paradigmatic examples of relatedness that the related-case rule itself provides for guidance. I must therefore evaluate the extent to which the new cases share a similarity of facts and legal issues with the *Interchange* litigation, and ultimately determine whether assigning the new cases to Judge Gleeson and me will likely result in a savings of judicial resources.

I conclude that the cases are not sufficiently related to warrant non-random assignment. The two sets of cases have some plaintiffs in common, and both involve antitrust claims relating to payment cards – but the similarity of facts (as opposed to "factual issues") and of legal issues largely ends there. The defendants in the new cases differ from those in the *Interchange* litigation, and the actions and policies at issue vary accordingly.

In arguing to the contrary, the plaintiffs cite a recent decision in this district for the proposition that the facts of different cases need not be identical to find them related. Memo. at 8 (citing *Electra Entertainment Group, Inc. v. Torres*, 2007 WL 4560594 (E.D.N.Y. Dec. 18,

5

2007)). In *Electra Entertainment Group*, the related cases involved claims by members of the Recording Industry Association of America ("RIAA") against hundreds of separately-sued individuals who were accused of infringing the plaintiffs' rights by sharing copyrighted songs via the Internet. When one of those individual defendants challenged having his case treated as related, the assigned judge wrote:

> While the specific facts constituting each defendant's alleged infringing activity differ from case to case, each RIAA case involves almost identical allegations, defenses, counterclaims, evidence, and technological issues. All of the plaintiffs have retained the same counsel, as have many of the defendants. Moreover, in the past four years more than 350 RIAA cases have been filed in this district, almost all of which involve relatively small sums of money. They generally present very similar factual and the same legal issues, although the latter have been relatively few for such a large number of cases. Having the same magistrate judge and judge preside over the entire group of cases, therefore, is significantly more efficient than random assignment. In addition, many of the defendants in these RIAA cases have limited resources with which to defend themselves, and Magistrate Judge Levy, who has become knowledgeable about these types of cases, has been instrumental in helping to secure equitable settlements for these defendants.

*Electra Entertainment Group*, 2007 WL 4560594, at *1.

The factual and legal commonalities among the lawsuits at issue in the cited case clearly outweighed the slight factual differences among them. There is no similar overlap here. Indeed, the instant cases share legal issues with the *Interchange* litigation in only the most general sense: both allege anti-competitive behavior based on a company's activity in the payment card industry. The facts relevant to those claims, however – which are inextricably intertwined with the legal analysis of the plaintiffs' claims – diverge significantly between the two sets of cases. In particular, all of the new cases – and none of those in the *Interchange* litigation – turn on contractual provisions that are specific to agreements between the AmEx Case Plaintiffs and American Express.

6

I agree with American Express that the plaintiffs read the related-case rule too broadly, and in particular that there is an important distinction between the rule's requirement of a "similarity of facts and legal issues" and the plaintiffs' reliance on a similarity of "factual and legal issues."  Local Civil Rule 50.3; Memo. at 7; Opp. at 3-4.  The latter standard sets the relatedness bar much lower than the rule itself does.  The pitfall in such a relaxed standard is that it would allow plaintiffs too much discretion to choose their judge, needlessly give rise to concerns about judge-shopping, and risk undermining public confidence in the judicial system.[1]

As the related-case rule itself implicitly recognizes, the latter risk properly gives way to the interest of judicial economy where assigning a case to a specifically identified judge, rather than one selected at random, will avoid duplication and waste of effort and thereby result in a substantial saving of judicial resources.  No such opportunity exists here.  The resolution of antitrust claims is an inherently fact-intensive endeavor, and the factual differences between the instant cases and those in the *Interchange* litigation significantly limit the advantage that Judge Gleeson and I would have over other judges in deciding such issues as may come before us in these new cases.  At best, Judge Gleeson or I would have the advantage of having already considered, researched, and written about, in the course of the *Interchange* litigation, the application of certain antitrust principles to certain aspects of the payment card industry writ large that will also be relevant to the new cases.  Even if randomly-selected judges did not have similar previous experience – which is hardly inevitable – they could easily attain the same modest level of familiarity with the relevant facts and concepts that Judge Gleeson and I enjoy.

---

[1] I do not in any way intend to imply that the plaintiffs here have invoked the related-case rule for any improper purpose, and American Express does not argue to the contrary.

Although the foregoing suffices, in my view, to warrant random reassignment of the instant cases, I note one further consideration that supports such a result. As I noted in the order to show cause, the AmEx Case Plaintiffs' resort to the related-case rule is rendered somewhat anomalous by the fact that the supposedly related pending action is actually a collection of dozens of separate cases from across the country. Many of those constituent cases in the *Interchange* litigation were transferred to this court and consolidated for purposes of pretrial matters pursuant to a statute that provides for such coordinated proceedings before a single judge "[w]hen civil actions involving one or more common questions of fact are pending in different districts" and when such coordination "will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). The rest were added to the *Interchange* litigation after the initial transfer order as so-called "tag-along" actions based on a determination that each involved "common questions of fact with actions previously transferred under Section 1407." Fed. R. P. J. P. M. L. 1.1.

The AmEx Case Plaintiffs disclaim any desire to have their lawsuit treated as "tag-along" actions – but they do not stop there. Instead, they add, "Nor do respondents contend that they *are* 'tag-along' actions that *can* or should be folded into" the *Interchange* litigation. Memo. at 2 (emphasis added). If the AmEx Case Plaintiffs agree that their complaints neither "are" tag-along actions (meaning they do not meet the definition that requires the existence of "common questions of facts with actions previously transferred") nor "can" be treated as such, it is difficult to see how they could satisfy the requirement of the local related-case rule that requires a similar commonality of facts and in addition requires a commonality of legal issues. The plaintiffs make no attempt to explain the apparent disconnect.

8

I therefore conclude that the five newly filed cases are not "related" to the *Interchange* litigation for purposes of Local Civil Rule 50.3, and therefore should not have been removed from the normal random assignment process.  However, while the new cases are not related to the *Interchange* litigation, they are plainly related to each other, and American Express concedes as much.  Opp. at 1.  Each of the five complaints alleges the same violations of law and harms stemming from the same "anti-steering" provisions of the American Express merchant acceptance agreements that have allegedly been in place since at least August 11, 1999.  These five cases thus involve identical issues of law and, to a great extent, identical facts – not just similar "factual issues."  I therefore direct that all five cases be reassigned to the same district judge and magistrate judge to be selected at random.

Finally, I will stay the instant order long enough to give the parties an opportunity to seek review by the currently assigned district judge.  Because the reassignment of the new cases by random selection is not among the eight types of actions set forth in 28 U.S.C. § 636(b)(1)(A), I may order such relief on my own authority rather than merely recommend it to the assigned district judge.  However, the same statutory provision also allows a district judge to "reconsider any pretrial matter under this subparagraph ... where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a).  The parties will be denied the opportunity to seek such reconsideration from Judge Gleeson if the reassignment I now order takes immediate effect.  Under the pertinent rules, a stay until August 22, 2008, will allow for such timely review.  *See* Fed. R. Civ. P. 72(a) (requiring objections to a magistrate judge's order to be filed within 10 days); Fed. R. Civ. P. 6.

D. Conclusion

For the reasons set forth above, I respectfully direct the Clerk to reassign all five of the captioned cases to a single district judge and a single magistrate judge, each selected at random. In order to afford the parties sufficient time to file a motion for reconsideration of this order by the currently assigned district judge, I stay this order until August 22, 2008.

**SO ORDERED.**

Dated: Brooklyn, New York
August 4, 2008

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge