# BOIES, SCHILLER & FLEXNER LLP

575 LEXINGTON AVENUE • 7TH FLOOR • NEW YORK, NY 10022 • PH. 212.446.2300 • FAX 212.446.2350

February 15, 2011

**VIA ECF**

Hon. Nicholas G. Garaufis  
United States District Court  
Eastern District of New York  
225 Cadman Plaza East, Rm. 1416 S  
Brooklyn, New York 11201

Hon. Ramon E. Reyes, Jr.  
United States District Court  
Eastern District of New York  
225 Cadman Plaza East, Rm. N208  
Brooklyn, New York 11201

*United States v. American Express Co.*, No. 10-cv-04496  
*In re: American Express Anti-Steering Rules Antitrust Litig.*, MDL No. 2221

Dear Judge Garaufis and Judge Reyes:

At a December 9, 2010, status conference, plaintiffs and the American Express Defendants ("Amex") agreed to engage in scheduling and coordination negotiations and report back to the Court in 60 days. Despite substantial efforts, significant disagreements remain. The most important issues[1] that require judicial intervention are:

1. Whether Amex is entitled to additional deposition time based on the new claims alleged by the United States and eighteen States (the "Government Plaintiffs") rather than being limited to the deposition time that had been established by this Court's current Order for cases only involving private plaintiffs.

2. Whether Amex should be entitled to the same freedom as the Government Plaintiffs in allocating deposition time to address all issues raised by their case.

3. Whether the parties' document productions should occur in parallel to meet interim deadlines to ensure that documents are produced on a common time table and that neither side has an unfair advantage in commencing depositions.

4. Whether 27 months (according to Amex) or 15 months (according to plaintiffs) is an appropriate period for fact discovery given that document production by more than 30 plaintiffs has not even begun, the scope of document production will be enormous, and it is undisputed that more than 200 days of depositions will need to occur after document production is substantially complete.

5. Whether class certification should be briefed on a full factual record contemporaneous with dispositive motions that will raise overlapping issues.

6. Whether Amex is entitled to an expanded period for preparing its expert reports now that the Government Plaintiffs have brought new claims and will proffer additional experts to which Amex must respond.

---

[1] For the Court's convenience, an Appendix to this letter summarizes all the issues in dispute between the parties, including less significant issues not addressed in this letter brief because of space considerations.

BOIES, SCHILLER & FLEXNER LLP

February 15, 2011
Page 2 of 9

     Pursuant to the parties' February 7, 2011, joint letter to the Court, this letter brief sets forth Amex's position on each of these six issues and respectfully requests that the Court enter the proposed coordination and scheduling orders annexed as Exhibits A and B, hereto. As explained below, Amex respectfully submits that these orders are necessary to ensure a level playing field where, as here, the Government Plaintiffs have had a multi-year head start in fact development, yet unreasonably seek to impose limitations on the scope and timing of discovery by Amex that plaintiffs do not accept for themselves.

## Background

     The baseline for the parties' discussions regarding coordination and scheduling have been the orders previously entered by Judge Pauley on February 11, 2010, and by this Court on February 19, 2010 ("the Coordination Orders"). The Coordination Orders in the SDNY class case and in the then five individual merchant plaintiffs cases in this Court allotted to both sides (a) 300 hours of deposition time plus (b) an additional 30 depositions, five of which could be extended time (which equates to 35 deposition days). Amex also was entitled to 5 additional depositions for any new individual merchant plaintiffs that might join the existing merchant actions in the EDNY (one of which could be extended time). Thus, were this Court simply to apply the rules established in the prior Coordination Orders, Amex would be entitled to 300 hours of deposition time plus 80 depositions to account for the 15 Individual Merchant Plaintiffs that now exist, before any consideration is given to the number of additional depositions that are required because of the lawsuit brought by DOJ and 18 Attorneys General. The fairness of these deposition limits was uncontested and the Coordination Orders were submitted as stipulations.

     As the Court is aware, the landscape has changed dramatically since the Coordination Orders. In January 2011, ten new individual merchants filed suit in this Court. These merchants (together with the five merchants that had previously sued, the "Individual Merchant Plaintiffs") are each large supermarkets that, collectively, have annual sales of approximately $200 *billion*. In addition, the United States and eighteen states (the "Government Plaintiffs") have filed a separate lawsuit (the "Government Action") challenging Amex's non-discrimination provisions in its merchant acceptance agreements (the "NDPs"). Further, four new class actions have been filed (together with the SDNY class plaintiffs, the "Class Plaintiffs"). These new cases dramatically multiply the number of parties from which discovery must be taken and coordinated. They also raise new issues. (*See, e.g.*, Am. Cmplt ¶¶41-50 (the "DOJ Complaint"), 1:10-cv-04496-NGG (alleging discrete antitrust market in "T&E" or "Travel & Entertainment").)

     The filing of claims by 29 new plaintiffs has also led to an enormous imbalance in discovery. All ten new Individual Merchant Plaintiffs, which are represented by the same counsel as the original Individual Merchant Plaintiffs, will have immediate access to hundreds of thousands of documents that Amex already produced. For example, last year, Amex produced to these firms the more than 1.5 million pages produced by Amex in the *Marcus* and *MDL 1720* litigations, as well as more than 150,000 pages of materials that Amex had produced to the Department of Justice ("DOJ") in response to a civil investigative demand ("CID"). The Government Plaintiffs have an even greater advantage: DOJ commenced its investigation of the matters at issue more than three years ago and, ever since, has been collecting documents and

BOIES, SCHILLER & FLEXNER LLP

February 15, 2011
Page 3 of 9

interviewing witnesses for use in this case. Amex has none of the materials produced to DOJ (except its own) and not a single document from any of the 29 new plaintiffs.

Given this imbalance, Amex's coordination and scheduling discussions with plaintiffs have sought a level playing field. <u>First</u>, Amex has sought an appropriate modification of the existing Coordination Orders so that Amex can reasonably pursue the additional discovery required for the Government Action—a lawsuit that did not exist at the time of the Coordination Orders and which was not contemplated by those orders. In particular, Amex has proposed that (a) 25 additional depositions be allocated to Amex in light of the new claims in the Government Action, and (b) Amex be given greater flexibility in using the depositions previously allotted under the Coordination Orders to account for the substantial additional discovery that the Government Action will require.

<u>Second</u>, Amex has sought a schedule for discovery that realistically accounts for the complexity of these cases, recognizes the very substantial discovery head start enjoyed by plaintiffs, and fairly addresses Amex's corresponding need to start discovery from scratch with respect to the 29 new plaintiffs that have sued since October 2010. Amex has thus proposed a close of fact discovery in May 2013 and the completion of expert discovery by the end of 2013.

The Government Plaintiffs, with the support of the private plaintiffs, have taken the position that American Express (a) is entitled to *no* additional deposition time based on the filing of the Government Action, and (b) cannot even allocate its existing deposition time with the same flexibility that the existing Coordination Orders contemplate (in light of plaintiffs' proposed limitations to the number of depositions that can be taken of each Individual Merchant). Plaintiffs have also sought to impose a 15 month schedule for fact discovery, which would allow Amex approximately the same time for fact development as the schedule entered by this Court in January 2010 when the relevant discovery to be conducted in these cases was orders of magnitude less complex. (*See, e.g.,* D.E. 62, 1:08-cv-02315-NGG-RER (January 26, 2010 Scheduling Order providing for completion of fact discovery by Feb. 28, 2011).)

**1.   Amex Is Entitled to Additional Deposition Time Based on the New Claims Alleged by the Nineteen Government Plaintiffs.**

The Government Plaintiffs take the position that Amex is not entitled to a single additional deposition as a result of the Government Action. This position is untenable.

<u>First</u>, DOJ has been investigating the matters involved in the Government Action for years. During that time, it has collected vast amounts of documents and undoubtedly interviewed many potential witnesses. Amex is plainly entitled to additional depositions to similarly develop these facts by deposing the witnesses implicated in the documents reviewed by DOJ, as well as the witnesses to whom DOJ has talked (or chosen not to interview).

<u>Second</u>, Amex is also entitled to additional depositions to address the new issues raised by the Government Action, such as the allegation of a discrete antitrust market in "T&E." (DOJ Complaint ¶¶41-50.) The T&E category includes numerous significant merchants in the airline,

BOIES, SCHILLER & FLEXNER LLP

February 15, 2011
Page 4 of 9

hotel, car rental, restaurant, and other similar industries. Amex plainly is entitled to additional depositions of these merchants to explore the Government Plaintiffs' new theory.

  <u>Third</u>, Amex is also entitled to additional depositions to develop facts relating to the acceptance by the Government Plaintiffs of Amex cards. The testimony of government witnesses with direct experience regarding payment forms is plainly relevant to the Court's consideration of the merit of the Government case. For example, the DOJ Complaint alleges that Amex has market power. (*See, e.g.,* DOJ Complaint ¶ 61 (claiming "merchants continue to accept" Amex "because they would face serious economic consequences if they ceased to accept" Amex).) Yet, the United States Air Force does not accept Amex, while the Army and Navy do. Testimony from government witnesses about such divergent choices could flatly contradict the Government Plaintiffs' allegations.[2]

  In all, given the number of new Government Plaintiffs, the numerous third parties implicated by DOJ's three year investigation and the Government Plaintiffs' expanded claims, Amex estimates that 50-60 new depositions are required. However, as set forth in the Proposed Discovery Coordination Order submitted herewith, Amex seeks just 25 additional depositions based on the Government Action (Ex. A, ¶15), as long as it has the same flexibility as the Government Plaintiffs to allocate time between the private and Government Actions.[3]

  In negotiations, plaintiffs have taken the position that even this limited request by Amex is too much. Plaintiffs are wrong. As an initial matter, Amex cannot reasonably be expected to use the limited deposition time *already allocated* to Amex under the *existing* Coordination Orders for all of the *additional* depositions that are necessary as a result of the *new* claims in the Government Action. The existing Coordination Orders allocated deposition time to Amex based on what was fairly required for Amex to defend itself against the *private litigations* that were then pending or contemplated; nothing in those protocols left extra deposition time to be allocated for some future government action that did not exist.

  The Government Plaintiffs' suggestion during negotiations that they have freed up adequate time under the existing Coordination Orders to account for the Government Action is also wrong. For example, although the Government Plaintiffs have noted that their proposed Coordination Order excludes any depositions that have already been taken from the deposition limits, Amex has only taken *one* deposition. That concession is not meaningful. Similarly, although the Government Plaintiffs have noted that under the Coordination Orders the 300 hours of time covered both fact and *expert* depositions, the parties agreement that expert deposition time will now be dealt with separately is plainly insufficient to address *all* of the fact development now required by the Government Action.

---

  [2] While certain of the Government Plaintiffs have suggested that discovery may not be taken of state government agencies as if they were parties to this matter, this issue is irrelevant. Even if *party* discovery is unavailable, relevant discovery of state agencies can still be obtained through third-party subpoenas.

  [3] As discussed in Section 2, below, if Amex's flexibility to use its existing deposition time to defend against the Government Action is constrained, Amex will need more than 25 additional depositions.

BOIES, SCHILLER & FLEXNER LLP

February 15, 2011
Page 5 of 9

The Government Plaintiffs are also wrong that it is inequitable to allot Amex more deposition time than the plaintiffs. As the private plaintiffs recognized when they *stipulated* to the existing Coordination Orders, fairness requires substantially more deposition time for Amex to account for the fact that Amex is being sued by numerous parties, while plaintiffs are pursuing claims against only one entity—Amex. Thus, the stipulated Coordination Orders appropriately provide that Amex should have significantly more deposition time than the private plaintiffs in recognition of the fact that Amex has to take discovery from numerous private plaintiffs, including 15 large supermarket and drug store chains that will have many relevant witnesses. The same is true with respect to the Government Action: Amex now needs further additional deposition time to account for the additional fact development necessitated by the new claims that the 19 new government plaintiffs have chosen to pursue. There is nothing inequitable about deposition allocations that appropriately recognize that Amex, alone among the litigants before the Court, faces claims from over 40 named parties.

Finally, the Individual Merchants Plaintiffs' proposal—offered for the first time by email at 6:42pm on the night before submissions were due to the Court—that Amex be limited to 400 hours of depositions is unreasonable on its face. This proposal provides for dramatically less time than the 930 hours of deposition time that the Individual Merchant Plaintiffs already *stipulated* should be available for depositions by Amex. The Individual Merchant Plaintiffs want the Court to believe that Amex should *lose* hundreds of hours of Court-ordered deposition time because 19 *additional* plaintiffs have sued. Both substantively and procedurally, the Individual Merchant Plaintiffs' last second attempt to rewrite the clear terms of the Court's existing Coordination Order is pure gamesmanship.

2.  **Amex Should Be Entitled to Make Its Own Decisions About How to Allot Its Deposition Time.**

The plaintiffs have also taken the position that they should be free to use *all* of the deposition time allotted under the existing Coordination Orders for any purpose they choose, including to pursue issues related to the Government Actions. Thus, for example, the plaintiffs have proposed that the Government Plaintiffs are entitled to use 325 hours (over 45 deposition days) of the existing 545 potential deposition hours allotted to the private plaintiffs to develop the facts in the Government Action as they see fit.

Amex does not object to this approach. Amex simply believes that the flexibility sought by plaintiffs in allocating deposition time must be *mutual*. (Ex. A, ¶16.) That is, if the Government Plaintiffs are free to use deposition time previously allocated to the private plaintiffs to pursue the new claims in the Government Action, then Amex should likewise have the freedom to use its existing allotment of deposition time (*i.e.*, the deposition days that were previously allotted to Amex for the Individual Merchant Actions) to defend against such claims.

This approach is not only fair, but it also has the salutary effect of limiting the absolute number of additional depositions that Amex needs as a result of the Government Action. As discussed above, if Amex is free to decide how to use its existing allocation of depositions to address issues arising from the Government Action, then it is prepared to limit the amount of new depositions to just 25, notwithstanding the 19 new plaintiffs asserting new claims. By

BOIES, SCHILLER & FLEXNER LLP

February 15, 2011
Page 6 of 9

contrast, limiting Amex's flexibility to use existing depositions will mean that Amex needs more than 25 additional depositions for the Government Action.

During discussions on these issues, plaintiffs have offered no reason why the Government Plaintiffs should have the freedom to use deposition time previously allotted to the Individual Merchant Plaintiffs as they wish, but constraints should be placed on Amex's ability to do the same. The Individual Merchant Plaintiffs have expressed concern that Amex's proposal could subject them to more than 5 depositions per Individual Merchant. But this possibility already existed under the Coordination Order entered by this Court *to which the Individual Merchants previously stipulated*. The Individual Merchant Plaintiffs' contrary claim is based on a gross misreading of paragraph 6 of the Coordination Order, which does not cap the number of depositions that Amex may take of each merchant just as there is no cap for depositions of Amex. In any event, there is no risk of prejudice to the Individual Merchants because Amex has agreed that any party may object to a deposition "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." (Ex. A, ¶5.)

3.  **The Parties Should Be Required to Work in Good Faith to Ensure Parallel Productions That Account for Plaintiffs' Head Start in Fact Development.**

As discussed, this case presents a unique circumstance where one side has a vast advantage over the other in discovery because plaintiffs have had hundreds of thousands of relevant Amex documents for months, if not years. Compared to this discovery head start for plaintiffs, Amex literally has not received a single document from more than 30 new plaintiffs and very little from the other plaintiffs. Accordingly, Amex has sought agreement from plaintiffs that the parties "will agree to use their best efforts to ensure that document productions by plaintiffs and defendants in the Amex Cases shall occur on generally the same schedule in order to ensure that both plaintiffs and defendants have an equal opportunity to use the limited time for discovery to schedule depositions in an orderly manner." (Ex. A, ¶34.) To accomplish this, Amex has suggested that the "parties agree to meet and confer to set interim dates when all parties shall make rolling productions that ensure document productions by all plaintiffs and Amex generally occur in parallel." (*Id.*) Such provisions are common in complex civil litigation to ensure a level playing field.

4.  **27 Months Is Fairly Required for Fact Discovery.**

The scope of discovery that will be required in these cases will be extensive. Even under plaintiffs' proposal, there will be more than 200 depositions taken, and only after millions of pages of documents have been collected. Remarkably, plaintiffs have taken the position that approximately the same amount of time previously allotted for fact discovery as when this matter included only 5 Individual Merchant Plaintiffs and 1 putative class action remains sufficient, notwithstanding the addition of 10 of the largest supermarket chains in the country, the United States, 18 States, and 4 new putative class representatives. This position is untenable.

At this point, fact discovery has barely begun. As the Court is aware, there have been extended discovery stays in place in both the Individual Merchant Actions and the putative class action that was previously pending before the Honorable William H. Pauley in the Southern

BOIES, SCHILLER & FLEXNER LLP

February 15, 2011
Page 7 of 9

District.  Thus, although Amex has already produced a significant number of documents, it has received very few from the original private plaintiffs.  Amex also has not received any documents from the 10 Individual Merchant Plaintiffs that joined this suit in January 2011, the 4 new putative class representatives or any of the Government Plaintiffs.  Indeed, no discovery requests have been served by or on any of the new plaintiffs, and third-party discovery (including discovery of the other significant payment card networks) has not started.  In light of this, Amex's proposal that document production be substantially completed over the next 10 months is not only reasonable, it is optimistic.

Similarly, only a handful of depositions have been taken (including only 1 by Amex).  Although it is possible that a limited number of additional depositions will be taken while document discovery is unfolding, the vast majority of the depositions will not be taken until party document productions are substantially complete.  As set forth in their respective proposals to the Court, all parties have agreed that they will work in good faith to avoid scheduling more than one deposition per day, although they recognize that in some circumstances it may become necessary to multi-track depositions.  Thus, given that there are approximately 20 business days in a given month, the deposition phase of these litigations can be expected to last approximately 10 months even under plaintiffs' proposed coordination order, and that is only if a deposition is scheduled for every single business day during each of those 10 months.  As a practical matter, that is highly unlikely given the number of parties and third parties that will be involved.

Amex's position that 27 months is the minimum amount of time fairly required to complete fact discovery is supported by reference to the amount of time that fact discovery has taken in similar matters.  For example, in *Marcus Corp. v. American Express*, 04 Civ. 5432 (GBD) (S.D.N.Y.), a case involving only one putative class, no opt-out plaintiffs and no government plaintiffs, fact discovery lasted for the same 27 month period that Amex is proposing here.  Similarly, in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 05 MDL 1720 (JG) (JO) (E.D.N.Y.), a complex multiparty litigation more analogous to this case than *Marcus*, fact discovery took more than 3 years to complete.  Finally, in *American Express v. Visa, et al.*, 04 Civ. 8967 (BSJ) (S.D.N.Y.), fact discovery lasted more than 16 months (1 month longer than plaintiffs have proposed here), even though the prior government action had established the antitrust violation, and discovery in the private case focused almost exclusively on damages.  Contrary to plaintiffs' arguments, anything less than 27 months for fact discovery in this matter would unfairly prejudice Amex's ability to defend itself against the sweeping antitrust claims that have been asserted against it by more than 40 plaintiffs (on behalf of more than 3 million merchants, the United States government, and 18 States).

5.  **Class Certification Briefing Should Occur on a Complete Factual Record Contemporaneous with Summary Judgment Briefing.**

Amex proposes that class certification briefing occur only after a complete factual record has been developed.  Beginning with *Miles v. Merrill Lynch & Co., Inc. (In re Public Offering Secs. Litig.)*, 471 F.3d 24, 33, 40 (2d Cir. 2006), and continuing with *McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008), the Second Circuit has increased the rigor with which courts must analyze motions for class certification pursuant to Rule 23.  Plaintiffs must establish that each prerequisite for the certification of a class has been satisfied, *Teamsters Local 445*

BOIES, SCHILLER & FLEXNER LLP

February 15, 2011
Page 8 of 9

*Freight Div. v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008), and courts can no longer decline to resolve factual disputes raised at the class certification stage simply because the relevant issues overlap with the merits of a plaintiff's claim. *See, e.g., In re IPO*, 471 F.3d at 41.

Consistent with these decisions, it is appropriate in complex matters to defer motions for class certification until after all fact and expert discovery is complete. *See, e.g., Xpedior Creditor Trust v. Credit Suisse First Boston (USA), Inc.* 399 F. Supp. 2d 375, 380 n.28 (S.D.N.Y. 2005) (Scheindlin, J.) (ruling on summary judgment before class certification may serve judicial efficiency). Here, for example, the relief requested would have profound effects on Amex's business model and a full discovery record is necessary to demonstrate why the divergent and conflicting interests of the millions of putative class members make class certification inappropriate. Amex's proposed approach avoids supplemental submissions on such issues and protects against the prejudice to defendants that can arise from the premature resolution of critical factual issues that overlap with the merits of plaintiff's claims on the basis of a limited evidentiary record. In contrast, there would be no prejudice to the plaintiffs if a decision on class certification were deferred until the Court considers dispositive motions, especially since denying class certification will not end this litigation as a practical matter.

6. **Amex Fairly Requires Additional Time for Expert Reports in Light of the Government Action.**

Finally, the parties disagree about the schedule for expert discovery. In its previous scheduling order concerning only the Individual Merchant Actions, the Court allotted approximately 5 1/2 weeks for the service of rebuttal expert reports, 3 1/2 weeks for sur-rebuttal reports and 7 weeks for expert depositions. (*See, e.g.,* D.E. 62, 1:08-cv-02315-NGG-RER (January 26, 2010 Scheduling Order).) The plaintiffs have taken the position that *less time* should be sufficient for *simultaneous* expert discovery in the Individual Merchant Actions, the Government Action and the putative class actions, notwithstanding the fact that the various groups of plaintiffs have alleged significantly different relevant product markets that will be the subject of extensive expert testimony. Specifically, plaintiffs have proposed to reduce the amount of time available for rebuttal reports (which will primarily be submitted by Amex since plaintiffs bear the burden of proof) to 4 weeks from approximately 5 1/2 weeks. Amex submits that rather than reducing the amount of time available for expert discovery, fairness requires modest increases to that schedule (*i.e.*, an additional 5 weeks for rebuttal reports, 3 1/2 weeks for sur-rebuttal reports and 2 weeks for expert depositions) to account for the addition of new plaintiffs and new theories.

Respectfully submitted,

/s/ Evan R. Chesler                              /s/ Donald L. Flexner

Evan R. Chesler                                   Donald L. Flexner
*Cravath, Swaine & Moore LLP*                     *Boies, Schiller & Flexner LLP*
*Counsel for American Express Defendants*         *Counsel for American Express Defendants*

BOIES, SCHILLER & FLEXNER LLP

February 15, 2011
Page 9 of 9

Encls.

cc:     Counsel on attached service list

BOIES, SCHILLER & FLEXNER LLP

## Appendix of Issues in Dispute

| | Amex Position | Plaintiffs' Position |
|---|---|---|
| 1 | **Amex Coordination Order ¶5**: All parties' right to object to depositions under Rule 26 is preserved. There is no need for duplicative language that suggests that the Government Plaintiffs are entitled to special rights to object to depositions because they state that they are suing in a "law enforcement" capacity. | **Plaintiff Coordination Order ¶ 5**: Plaintiff seeks express language that the Government Plaintiffs, "suing in a law enforcement capacity, reserve the right to object to discovery of governmental entities." |
| 2 | **Amex Coordination Order ¶15(c)**: To account for the Government Action, Amex is entitled to 25 additional depositions beyond the depositions already allotted to Amex under the existing Coordination Orders. | **Plaintiff Coordination Order ¶14**: Amex is entitled to no additional depositions to account for the Government Action. |
| 3 | **Amex Coordination Order ¶16**: All parties may use the deposition time and number of depositions allotted to them in any way they choose, subject to the protections in ¶5 that any party may object to a deposition "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." | **Plaintiff Coordination Order ¶14**: Amex may only use its allocation of 80 depositions under the existing EDNY Coordination Order for depositions of the Individual Merchant Plaintiffs or third parties whose depositions are noticed because those Individual Merchant Plaintiffs are plaintiffs. Amex may take no more than 5 depositions of any Individual Merchant Plaintiff. None of the 300 hours of deposition time allotted to Amex under the existing Coordination Orders may be used for depositions of Individual Merchant Plaintiffs. |
| 4 | **Amex Coordination Order ¶17**: For any additional cases filed by counsel for the parties in the Individual Merchant Actions, Amex will get 5 additional depositions of that additional party or of additional third parties whose depositions are noticed because the additional party has become a plaintiff. For any additional government plaintiffs, Amex will get 3 additional depositions. | **Plaintiff Coordination Order ¶17**: Should any new parties be added to the litigation, the parties shall meet and confer to discuss whether, and to what extent, the deposition limitations should be amended. |
| 5 | **Amex Coordination Order ¶19**: To avoid confusion and disputes, the parties agree to periodically exchange reports setting forth their calculation of how much deposition time they have used. | No relevant provision. |
| 6 | **Amex Coordination Order ¶29**: The parties agree to cooperate in good faith to stipulate to the authenticity and admissibility of documents. No additional deposition time is required to lay the foundation for the admissibility of documents or data. | **Plaintiff Coordination Order ¶27**: The parties agree to cooperate in good faith to stipulate to authenticity and admissibility of documents. To the extent any deposition time is required following negotiations over such stipulations, it shall be in addition to the deposition limitations in the Stipulation and Order. |

|   | **Amex Position** | **Plaintiffs' Position** |
|---|---|---|
| 7 | **Amex Coordination Order ¶35:** The parties agree to use their best efforts to ensure that document productions by plaintiffs and defendants in the Amex Cases shall occur on generally the same schedule in order to ensure that both plaintiffs and defendants have an equal opportunity to use the limited time for fact discovery to schedule depositions in an orderly manner. The parties agree to meet and confer to set interim dates when all parties shall make rolling productions that ensure document productions by all plaintiffs and Amex generally occur in parallel. | No relevant provision. |
| 8 | **Amex Scheduling Order ¶3:** All parties must substantially complete document productions by December 31, 2011 (approximately 10 months). | No relevant provision. |
| 9 | **Amex Scheduling Order ¶4:** Fact discovery shall be completed by May 17, 2013 (approximately 27 months). | **Plaintiff Scheduling Order ¶3:** Fact discovery shall be competed by May 31, 2012 (approximately 15 months). |
| 10 | **Amex Scheduling Order ¶¶5-7:**<br><br>Initial expert reports are due June 14, 2013.<br><br>Rebuttal expert reports are due August 30, 2013 (approximately 11 weeks after the initial expert reports are due).<br><br>Sur-rebuttal expert reports are due by October 18, 2013 (approximately 7 weeks after the rebuttal expert reports are due). | **Plaintiff Scheduling Order ¶¶4-6:**<br><br>Initial expert reports are due June 28, 2012.<br><br>Rebuttal expert reports are due July 26, 2012 (approximately 4 weeks after the initial expert reports are due).<br><br>Sur-rebuttal expert reports are due by August 23, 2012 (approximately 4 weeks after the rebuttal expert reports are due). |
| 11 | **Amex Scheduling Order ¶8:** Depositions of expert witnesses shall take place between October 23, 2013, and December 20, 2013 (approximately 8 weeks). | **Plaintiff Scheduling Order ¶7:** Depositions of expert witnesses shall take place between August 27, 2012, and October 8, 2012 (approximately 6 weeks). |
| 12 | **Amex Scheduling Order ¶10:** Any dispositive motions shall be filed by the parties by January 17, 2014; any opposition briefs shall be due by February 14, 2014; any reply briefs shall be due by February 28, 2014. | No relevant provision. |
| 13 | **Amex Scheduling Order ¶11:** Motions for class certification shall be filed and briefed on the same schedule as dispositive motions after the completion of all discovery. | No relevant provision. |


## Service List

Craig W. Conrath
  (*craig.conrath@usdoj.gov*)
Mark Hamer
  (*mark.hamer@usdoj.gov*)
Gregg I. Malawer
  (*gregg.malawer@usdoj.gov*)
Bennett Matelson
  (*bennett.matelson@usdoj.gov*)
Anne Newton McFadden
  (*anne.mcfadden@usdoj.gov*)
U.S. DEPARTMENT OF JUSTICE
Antitrust Division
450 Fifth Street, NW
Suite 4000
Washington, DC 20530

Nancy M. Bonnell
  (*nancy.bonell@azag.gov*)
Office of the Attorney General
STATE OF ARIZONA
1275 West Washington
Phoenix, AZ 85007

Michael E. Cole
  (*michael.cole@azag.gov*)
Rachel O. Davis
  (*rachel.davis@azag.gov*)
Office of the Attorney General
STATE OF CONNECTICUT
55 Elm Street, 4th floor
P.O. Box 120
Hartford, CT 06141

Rodney I. Kimura
  (*rodney.i.kimura@hawaii.gov*)
Deborah Day Emerson
  (*deborah.d.emerson@hawaii.gov*)
Office of the Attorney General
STATE OF HAWAII
425 Queen Street
Honolulu, HA 96813

Brett T. Derange
 (*brett.delange@ag.idaho.gov*)
Office of the Attorney General
STATE OF IDAHO
954 West Jefferson Street
P.O. Box 83720
Boise, ID 83720

Robert W. Pratt
 (*rpratt@atg.state.il.us*)
Office of the Attorney General
STATE OF ILLINOIS
100 West Randolph Street
Chicago, IL 60601

Layne M. Lindebak
 (*layne.linkebak@iowa.gov*)
Office of the Attorney General
STATE OF IOWA
Hoover Office Building
1305 East Walnut Street, 2nd floor
Des Moines, IA 50319

Gary Honick
 (*ghonick@oag.state.md.us*)
Ellen S. Cooper
 (*ecooper@oag.state.md.us*)
Office of the Attorney General
STATE OF MARYLAND
200 St. Paul Place, 19th floor
Baltimore, MD 21202

D.J. Pascoe
 (*pascoed1@michigan.gov*)
Office of the Attorney General
STATE OF MICHIGAN
G. Mennon Williams Building
525 West Ottawa Street, 6th floor
Lansing, MI 48933

Anne E. Schneider
 (*anne.schneider@ago.mo.gov*)
Andrew M. Hartnett
 (*andrew.hartnett@ago.mo.gov*)
Office of the Attorney General
STATE OF MISSOURI
P.O. Box 899
Jefferson City, MO 65102

Chuck Munson
  (*cmunson@mt.gov*)
Office of the Attorney General
STATE OF MONTANA
215 North Sanders
Helena, MT 59601

Leslie C. Levy
  (*leslie.levy@ago.ne.gov*)
Office of the Attorney General
STATE OF NEBRASKA
2115 State Capitol Building
Lincoln, NE 68509

David A. Rienzo
  (*david.rienzo@doh.nh.gov*)
Office of the Attorney General
STATE OF NEW HAMPSHIRE
33 Capitol Street
Concord, NH 03301

Mitchell L. Gentile
  (*mitchell.gentile@ohioattorneygeneral.gov*)
Patrick E. O'Shaughnessy
  (*patrick.o'shaughnessy@ohioattorneygeneral.gov*)
Office of the Attorney General
STATE OF OHIO
150 East Gay Street, 23rd floor
Columbus, OH 43215

Edmund F. Murray, Jr.
  (*emurray@riag.state.ri.us*)
Office of the Attorney General
STATE OF RHODE ISLAND
150 South Main Street
Providence, R.I. 02906

Victor J. Domen, Jr.
  (*vic.domen@ag.tn.gov*)
Office of the Attorney General
STATE OF TENNESSEE
425 Fifth Avenue North
Nashville, TN 37202

Kim Van Winkle
  (*kim.vanwinkle@oag.state.tx.us*)
Bret Fulkerson
  (*bret.fulkerson@oag.state.tx.us*)
Office of the Attorney General
STATE OF TEXAS
300 West 15th Street
Austin, TX 78701

Ronald J. Ockey
  (*rockey@utah.gov*)
Office of the Attorney General
STATE OF UTAH
160 East 300 South, 5th floor
Salt Lake City, UT 84111

Sarah E.B. London
  (*slondon@atg.state.vt.us*)
Office of the Attorney General
STATE OF VERMONT
109 State Street
Montpelier, VT 05609


Andrew C. Finch
  (*afinch@paulweiss.com*)
Kenneth A. Gallo
  (*kgallo@paulweiss.com*)
PAUL WEISS RIFKIND WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019

Joseph J. Simons
  (*jsimons@paulweiss.com*)
PAUL WEISS RIFKIND WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006

Keila D. Ravelo
  (*kravelo@willkie.com*)
Matthew Freimuth
  (*mfreimuth@willkie.com*)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019

*Counsel for Defendant Mastercard Intl., Inc. in DOJ Action*

Robert C. Mason
  (*robert.mason@aporter.com*)
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022

Jonathan Gleklen
  (*jonathan.gleklen@aporter.com*)
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004

*Counsel for Defendant Visa, Inc. in DOJ Action*


Gary B. Friedman
  (*gfriedman@flgllp.com*)
Tracey Kitzman
  (*tkitzman@flgllp.com*)
Sarah Field
  (*sfield@flgllp.com*)
FRIEDMAN LAW GROUP
270 Lafayette Street, 14th Floor
New York, NY 10012

Scott Levy
  (*slevy@murrayfrank.com*)
MURRAY, FRANK & SAILER LLP
275 Madison Avenue, 8th Floor
New York, NY 10016

Mark Wendorf
  (*m.wendorf@rwblawfirm.com*)
REINHARDT WENDORF & BLANCHFIELD
332 Minnesota Street
St. Paul, MN 55101
(651) 297-2100

Christopher W. Hellmich
  (*chellmich@pattonboggs.com*)
PATTON BOGGS
2550 M Street, NW
Washington, DC 20037

*Counsel for Class Plaintiffs in SDNY Action*

Richard Alan Arnold
  (*rarnold@kennynachwalter.com*)
William J. Blechman
  (*wblechman@kennynachwalter.com*)
James Almon
  (*jalmon@kennynachwalter.com*)
Douglas H. Patton
  (*dpatton@kennynachwalter.com*)
KENNY NACHWALTER
1100 Miami Center
201 South Biscayne Boulevard
Miami, FL 33131

*Counsel for Plaintiffs Walgreen Co., H.E. Butt Grocery Co., Kroger Co., Safeway Inc., Ahold U.S.A., Inc., Albertson's LLC, Hy-Vee, Inc., & Great Atlanta & Pacific Tea Co. in EDNY Actions*


Paul E. Slater
  (*pes@sperling-law.com*)
Mitchell H. Macknin
  (*mhmacknin@sperling-law.com*)
SPERLING & SLATER
55 West Monroe Street, Suite 3200
Chicago, IL 60603

Robert N. Kaplan
  (*rkaplan@kaplanfox.com*)
Richard J. Kilsheimer
  (*rkilsheimer@kaplanfox.com*)
KAPLAN FOX & KILSHEIMER
850 Third Avenue, 14th Floor
New York, NY 10022

Linda Nussbaum
  (*lnussbaum@gelaw.com*)
GRANT & EISENHOFER, P.A.
485 Lexington Avenue
New York, NY 10017

Joseph M. Vanek
   (*jvanek@vaneklaw.com*)
David P. Germaine
   (*dgermaine@vaneklaw.com*)
VANEK, VICKERS & MASINI, P.C.
111 S. Wacker, Suite 4050
Chicago, IL 60606

*Counsel for Plaintiffs CVS Pharmacy, Inc., Meijer, Inc.,*
*Publix Super Markets, Inc., Raley's, & Supervalu Inc.*
*in EDNY Actions*


Steven D. Shadowen
   (*sshadowen@hangley.com*)
Eric L.Bloom
   (*ebloom@hangley.com*)
HANGLEY ARONCHICK SEGAL & PUDLIN
30 North Third Street, Suite 700
Harrisburg, PA 17101

*Counsel for Plaintiffs Rite Aid Corp.,*
*Rite Aid Hdqtrs. Corp., & Bi-Lo, LLC*
*in EDNY Action*


Robert A. Skirnick
   (*mcgsny@aol.com*)
MEREDITH COHEN GREENFOGEL & SKIRNICK, PC
19 Rockwood Road West
Manhasset, NY 11030

Steven J. Greenfogel
   (*sgreenfogel@mcgslaw.com*)
Joel Meredith
   (*jmeredith@mcgslaw.com*)
Dan Allanoff
   (*dallanoff@mcgslaw.com*)
MEREDITH COHEN GREENFOGEL & SKIRNICK, PC
1521 Locust Street, 8th floor
Philadelphia, PA 19102

Vincent J. Esades
   (*vesades@heinsmills.com*)
HEINS MILLS & OLSON, PLC
310 Clifton Avenue
Minneapolis, MN 55403

*Counsel for Class Plaintiffs in Firefly Action*

Ronen Sarraf
  (*ronen@sarrafgentile.com*)
Joseph Gentile
  (*joseph@sarrafgentile.com*)
SARRAF GENTILE LLP
One Penn Plaza, Suite 2424
New York, NY 10119

Eugene A. Spector
  (*espector@srkw-law.com*)
William G. Caldes
  (*bcaldes@srkw-law.com*)
Rachel E. Kopp
  (*rkopp@srkw-law.com*)
SPECTOR ROSEMAN KODROFF & WILLIS PC
1818 Market Street, Suite 2500
Philadelphia, PA 19103

David P. McLafferty
  (*dpmclafferty@yahoo.com*)
MCLAFFERTY & ASSOCIATES PC
923 Fayette Street
Conshohocken, PA 19428

*Counsel for Class Plaintiffs in Plymouth Oil Action*


Brian G. Weber
  (*brian@johnsflaherty.com*)
Joseph G. Veenstra
  (*joe@johnsflaherty.com*)
JOHNS, FLAHERTY & COLLINS, SC
205 Fifth Avenue South, Suite 600
P.O. Box 1626
La Crosse, WI 54601

*Counsel for Class Plaintiffs in Treehouse Action*

R. Alexander Saveri
  (*rick@saveri.com*)
SAVERI AND SAVERI INC.
706 Sansome Street
San Francisco, CA 94111

Robert W. Cohen
  (*rwc90067@aol.com*)
LAW OFFICES OF ROBERT W. COHEN
1875 Century Park East, Suite 1770
Los Angeles, CA 90067

*Counsel for Class Plaintiffs in Il Forno Action*