# Exhibit 3

1

```
9ch1amec
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

PERFORMANCE LABS, INC. on
behalf of themselves and all
similarly situated persons, et
al.,

              Plaintiffs,

      v.                          06-CV-2974 (WHP)

AMERICAN EXPRESS COMPANY, et
al.,

              Defendants.         Conference

------------------------------x
                                  New York, N.Y.
                                  December 17, 2009
                                  3:00 p.m.

Before:

              HON. WILLIAM H. PAULEY III,

                                  District Judge

                    APPEARANCES

FRIEDMAN LAW GROUP LLP
      Attorneys for Plaintiffs
BY:   GARY B. FRIEDMAN, ESQ.
      TRACEY KITZMAN, ESQ.
      DEAN M. SOLOMON, ESQ.

BOIES, SCHILLER & FLEXNER, LLP
      Attorneys for Defendants
BY:   DONALD L. FLEXNER, ESQ.
      PHILIP C. KOROLOGOS, ESQ.
```

2

9ch1amec

```
 1              (In open court)
 2              (Case called)
 3         THE CLERK:  Will counsel for the plaintiff please give
 4    their appearance.
 5         MR. FRIEDMAN:  For the plaintiffs, I'm Gary Friedman,
 6    and with me today are my partner Tracey Kitzman and Dean
 7    Solomon.
 8         THE COURT:  All right.  Good afternoon.
 9         MR. FRIEDMAN:  Good afternoon, your Honor.
10         THE CLERK:  Counsel for the defendant?
11         MR. FLEXNER:  Your Honor, my name is Donald Flexner,
12    Boies, Schiller & Flexner, representing American Express.  And
13    I'm accompanied by my partner, Phil Korologos.
14         THE COURT:  All right.  Good afternoon.
15         MR. KOROLOGOS:  Good afternoon, your Honor.
16         THE COURT:  All right.  I received the parties' joint
17    letter submission.  As I told you in my prior order, we're here
18    to fix a schedule in this case.  And it's a little difficult to
19    understand what's been going on here in the last four and a
20    half months.  Does somebody want to bring me up to date.
21         MR. FRIEDMAN:  I'm happy to take the first crack at
22    that, your Honor.
23         THE COURT:  Go ahead, Mr. Friedman.
24         MR. FRIEDMAN:  Subsequent to our last conference we --
25    at around the same time as our last conference, we served the
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3

9ch1amec

1    first set of discovery requests.  That was a jointly propounded
2    request.  By jointly, I mean together with the individual
3    plaintiffs in the Eastern District action.  Your Honor's ruling
4    was that American Express was not under any obligation to
5    respond to that request in this -- for purposes of this
6    litigation until we had a joint conference, a joint discovery
7    conference, which I think is what your Honor was envisioning.
8           We promulgated a -- we sought to promulgate a second
9    request, which was more tailored.  And let me just back up for
10   just a moment.  The first requests that are outstanding to
11   American Express seek only documents that were produced in
12   other litigations that have already been produced and documents
13   that have been produced to the Department of Justice pursuant
14   to a CID, a second request that's outstanding as Justice is
15   looking at these matters.  We sought to do a second request
16   on -- in this case, and we sent our proposed draft requests to
17   the individual plaintiffs.  We weren't able to get anywhere.
18   We weren't able to have a meeting amongst ourselves, and we,
19   throughout this period -- this is during May.
20          Also during May, we met, the three parties met --
21   ourselves, American Express, and the individual plaintiffs --
22   towards hammering out a protocol for the resolution of -- for
23   how we're going to coordinate.  This is something we had
24   discussed a bit with your Honor as well.  We didn't quite come
25   to closure, but we made a great deal of progress during that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

9ch1amec
1   process.
2           One of the questions that we raised early on with
3   American Express and with the individual plaintiffs was how
4   this structure, this two-court solution, might address the --
5   ameliorate the problem that we saw as potential for
6   inconsistent rulings, which -- and with it the concomitant
7   possibilities of delay, because I think the inconsistent
8   rulings on some of the specific matters that have already been
9   discussed, in these cases -- should that come to pass, I think
10  it becomes inevitable that there will be interlocutory appeals
11  and more delay and more delay.  So we're very concerned about
12  that.
13          So we initiated a motion for centralization in front
14  of the MDL.  We did that in August.  At that time we still had
15  not been able to even get our second requests out the door.  So
16  there was -- I will tell you there was a little frustration on
17  our part with our co-plaintiffs.  But -- so we filed that.  We
18  were absolutely neutral.  We were absolutely neutral as to the
19  transferee forum.  The parties all had their say.  We made our
20  arguments.  We went up to Boston, we lost, and we're here.  And
21  now we seek to -- as your Honor does, and we understand from
22  your Honor's order -- we're anxious to set a scheduling order
23  and to get it going.  And we're going to do everything we can
24  in our power to make this two-court solution work.
25          THE COURT:  I mean, you've now come up with a
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

5

9ch1amec
1  two-court solution.
2           MR. FRIEDMAN:  I -- well, go ahead.
3           THE COURT:  I suggested the possibility of a joint
4  coordination.  From what I can see in this letter, the parties
5  then just went off on their own.
6           Let me hear for a moment from the defendant as to what
7  the defendant's version of all of this is.
8           MR. FLEXNER:  Your Honor, I think the description is
9  incomplete in terms of what was done to carry out your
10  instructions.  The premise of our meeting with the Court in
11  April of 2009 was your conviction that these two related
12  litigations, one on behalf of the class and one on behalf of
13  giant optout merchants, was, the two cases had to be
14  coordinated.  And the premise of that was, it was in fairness
15  to American Express, so we wouldn't be whipsawed with
16  inconsistent, excessive demands for discovery depositions and
17  motions.  So -- and that was the premise on which the
18  multidistrict panel denied transfer.  It found that
19  coordination was feasible and that the parties were working
20  towards that effectively.
21           THE COURT:  How did it make that finding?
22           MR. FLEXNER:  What's that, your Honor?
23           THE COURT:  How did it make that finding?
24           MR. FLEXNER:  Because it read the record of what had
25  been happening that was presented to the MDL panel, which I was
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

6

9ch1amec

1  about to describe, and it saw in that record the potential for
2  effective coordination between two courts, which I think this
3  Court itself observed, having said in April that your Honor and
4  Judge Garaufis had spoken about the case and spoke about
5  coordinating.  Let me tell you what was done, and let me tell
6  you what is left.  And it is not very much, but it does take, I
7  think, attention by both this Court and Judge Garaufis.
8          First, the easy things.  We have agreement on
9  protective order, we have an agreement on expert stipulation,
10  and we have an agreement on a discovery protocol, which would
11  require joint discovery coordinated between the individual
12  optout plaintiffs and the class plaintiffs.  That would be
13  entered as an order of the two courts and which would guide
14  discovery by the optout merchants, by the class, to the class
15  plaintiffs, and by American Express.  And it would require
16  joint discovery requests by the plaintiffs, organized in a way
17  that makes sense.  And where they couldn't agree on joint
18  requests, then it requires that the plaintiff that didn't agree
19  certify either that they weren't going to make such discovery
20  or they weren't -- and they were out of it, essentially.
21          There are only three issues in this protocol that
22  haven't been agreed.  And I'll quickly go through them.
23          First, the class plaintiffs and American Express agree
24  that all discovery can be used in both cases, which seems to me
25  efficient, for purposes of getting to admissibility questions

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7

9ch1amec

1   and other questions down the road.  The optouts disagree with
2   that.  That is one issue left for decision by this Court and by
3   Judge Garaufis.
4          Second, the plaintiffs in both cases will serve joint
5   discovery so that we avoid this whipsaw problem, unless one of
6   the parties has agreed not to such discovery or hasn't
7   responded within ten days.  The class plaintiffs and American
8   Express have agreed to this.  The optout has not.  That
9   requires a decision by this Court and Judge Garaufis.
10         Third, there is a disagreement between the class and
11  we and the individual plaintiffs on how much time to allot to
12  American Express when American Express is taking a deposition
13  either of a third party, an optout party, or a class plaintiff.
14  And our position is very simple.  We have -- we're entitled to
15  seven hours on the clock.  Their position varies, but we need
16  two hours, etc.  That requires a decision.
17         But those are the only three areas that stand between
18  us for resolution to have a coordination order entered which
19  gives a single magistrate, Magistrate Reyes in Brooklyn --
20         THE COURT:  Who decided that?
21         MR. FLEXNER:  Nobody.  Your Honor, our understanding
22  was that the Court -- this is put to your Honor and Judge
23  Garaufis for approval.  It is not something we decided.  It is
24  something we proceeded because your Honor and Judge Garaufis
25  gave strong indication that they wanted to formally coordinate

9ch1amec

1    the two cases.  And so we proceeded down the road to reach
2    agreements that would be fair to both.  So we haven't decided
3    anything.  We were trying to implement what we understood to be
4    the direction of both courts.  We also believe strongly that it
5    is --
6              THE COURT:  When you say that there are certain
7    matters that are in dispute that have to be decided and you
8    outline three, implicit in that, Mr. Flexner, is that you and
9    the other parties have already decided how you think discovery
10   is going to proceed.
11             MR. FLEXNER:  Well, we've decided on procedures for
12   the conduct of discovery that we would propose to your Honor,
13   just like we decided and negotiated procedures for a protective
14   order that we presented to your Honor.
15             THE COURT:  Did American Express oppose coordination
16   before the MDL?
17             MR. FLEXNER:  We said we didn't think it was necessary
18   because we would get coordination in the manner described by
19   your Honor.
20             THE COURT:  So you opposed it.  How is this an
21   improvement over having coordination in an MDL?
22             MR. FLEXNER:  What I said, your Honor, the first time
23   we had this discussion, was I thought there was an advantage to
24   doing it this way because when the MDL is done, in the ordinary
25   course, it goes back to the courts of origination, unless

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9ch1amec

```
 1   otherwise stipulated.  In that case one of the judges doesn't
 2   know what the case is about -- or more of the judges.  In this
 3   case, we've got optout cases involving five plaintiffs with
 4   $3 billion in revenues, we've got seven punitive class
 5   representatives representing about 1.7 million in dollars, and
 6   we think a vastly different profile.  When those cases, if they
 7   go back, if they're not time barred, go back to your Honor and
 8   go back to Judge Garaufis, at least there will be courts who
 9   have particularized and developed knowledge about those cases,
10   and that was the -- that was discussed with you back in April
11   of 2009.  And we thought you thought it made sense.  So we have
12   tried to implement, in the period between April and the
13   present, we thought successfully, a process by which the two
14   cases could proceed on a simultaneous discovery track, motion
15   track, expert track, and schedule leading up to trial, minimize
16   the enormous burden on a single company of having to respond
17   separately, absent coordination, to successive duplicative
18   depositions and document requests.
19           THE COURT:  Well, quite frankly, I just don't
20   understand it, because there was no application in the wind
21   about any MDL in this matter when you were before me back in
22   April.  I and my colleague, Judge Garaufis, were doing the best
23   we could to improvise, and when I get an order from the MDL
24   panel telling me that there's all kinds of coordination going
25   on, Judge Garaufis and I, quite frankly, could look at each
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9ch1amec

1    other from across the river and just wonder.
2           So now I'm going to tell you what's going to go on in
3    this case because, among other things, you make some
4    assumptions that are completely unwarranted.
5           First of all, you assume that I would refer discovery
6    in this case to a magistrate judge.  You're entirely wrong
7    about that.  I do not do that.  I deal with the specific
8    issues.  The best way for a judge to get to know a case is to
9    have the parties before the Court on all disputes.  By the way,
10   it cuts down on discovery disputes.  So you can make any
11   agreement you want, but I won't approve any agreement to have a
12   magistrate judge decide discovery issues in my case.  I'm going
13   to run the case.  And that's the message you're going to get,
14   because for whatever reasons, you folks decided how you were
15   going to present this and you want to be running things in
16   courts and having two district judges spending significant time
17   on their docket, and a magistrate judge.  And then I guess you
18   want me to accept whatever the magistrate judge does, who's not
19   even in my court, on a matter of this magnitude that can affect
20   the whole course of the litigation.  I don't do that.  I won't
21   do it in this case.  I don't do it in any case.  So that's
22   number one.
23          Now I want to set a schedule.  I think it's laudable,
24   if you agree, that whatever discovery you're taking in one case
25   can be used in another case subject, of course, to relevance
              SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

9ch1amec
1   and all of the evidentiary questions, but this is a case that
2   I'm going to treat like any other litigation.
3           MR. FLEXNER:  May I respond to that?
4           THE COURT:  Yes.  You made your bed, so now you're
5   going to sleep in it.
6           MR. FLEXNER:  I don't remember making a bed, but I
7   usually do sleep in the bed I make.
8           Let me just respond to the point you just made.  As I
9   said before, anything that we worked out that we thought would
10  be efficient was obviously subject to your Honor's approval.
11  I'm happy --
12          THE COURT:  Let me ask you that.  Was that all
13  presented to the MDL?  Was it presented to the MDL, what
14  you've --
15          MR. FLEXNER:  All that was presented to the MDL was
16  the nature of the negotiation and the contemplation, as we
17  understood it, from the two courts that were supervising --
18          THE COURT:  You took a lot of license, Mr. Flexner.
19          MR. FLEXNER:  Well, your Honor --
20          THE COURT:  So let's set a schedule in this case.
21          First of all, the parties spent a lot of time sparring
22  in their submissions over the number of depositions, or the
23  number of nonparty depositions, the number of hours that should
24  be credited if a deposition is taken in the other cases.  It
25  all sounds very elaborate, with a lot of exquisite detail.  I

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9ch1amec

1  think it would be much simpler to just fix a number of hours of
2  deposition per side and you spend those hours however you want.
3  You can take a four-hour deposition of a nonparty or an
4  American Express representative or you can take a twelve-hour
5  deposition of an American Express representative if that person
6  has critical information that can't be obtained.  So I will
7  hear from each of you for a moment as to how many hours of
8  deposition you think you need in this case and then I'm going
9  to fix it.
10          MR. FLEXNER:  Your Honor --
11          THE COURT:  What do you say, Mr. Friedman?  He is the
12  plaintiff, Mr. Flexner.  I know you want to occupy the podium,
13  but --
14          MR. FRIEDMAN:  No.  We had proposed 25, having in mind
15  seven-hour depositions.  I'll stick with that.  So we'll do the
16  math.  Just don't ask me to do it on the record, because I
17  might get it wrong.  200 minus 25, that's 175 hours.
18          THE COURT:  That's nonparties, that's the works.
19          MR. FRIEDMAN:  It's the works.  And I recognize the
20  potential for tremendous asymmetry here, because the defendants
21  are going to ask for a huge number, and I would certainly like
22  to argue against that, but that's what we need.
23          THE COURT:  Mr. Flexner, how many hours do you want?
24          MR. FLEXNER:  I'm happy, if we're talking about
25  parties in this case, to have 25 depositions.  The problem is,

13

9ch1amec

1    we need at least 70 depositions to take of third parties who we
2    believe don't belong in this class and whose depositions we
3    think are essential.  So if you make that a hundred depositions
4    times seven, that's 700 hours.
5           THE COURT:  Is that your request?
6           MR. FLEXNER:  That's my request.
7           THE COURT:  Fine.  All right.  I'm going to give each
8    side 300 hours of depositions.  Use them as you see fit.
9           Now the parties also seem to be at loggerheads over
10   the length of time for discovery in this case, and I think that
11   the notion that a case bearing an 06 civil action number should
12   play out for years is not something that I'm willing to accept.
13   There are plenty of resources on both sides here, and the
14   parties can get to work.  There's no reason for discovery to
15   drag on for 40 months.  So I don't see any reason why fact
16   discovery can't be completed in 14 months in this case.  So I'm
17   going to fix a fact discovery cutoff of February 28th, 2011.
18          Now I also think that, given the issues here, as soon
19   as the plaintiffs think that they are ready to move for class
20   certification, they should do so.  Because that's going to
21   resolve a lot of issues in this case.
22          So Mr. Friedman, what do you propose on that score?
23          MR. FRIEDMAN:  We had proposed October 1, 2010, but
24   that was with a proposed cutoff date of December 31st.  Your
25   Honor has now moved that back two months.  I would move the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

14

9ch1amec

1    October 1 date back two months and ask for December 1st 2010,
2    presuming it's not a weekend.  This is for the last date by
3    which to move, right?
4            THE COURT:  Right.
5            Mr. Flexner, do you have a view on that?
6            MR. FLEXNER:  Well, I have the view that we may not
7    have completed the discovery that we need to address the class
8    motion, and --
9            THE COURT:  If you can't get that discovery done by
10   December 1, then I would say you have a problem.  I think you'd
11   better get started on it.
12           MR. FLEXNER:  We will do that, your Honor.
13           THE COURT:  Good.  I know that you are capable of
14   doing it.  In fact, I know you could do it by June 1 if I
15   ordered it, but I'm not ordering that.
16           Now with respect to expert discovery, I see no reason
17   why the plaintiffs shouldn't submit their expert reports by
18   March 31.  Defendants, I see no reason why you need two months
19   to respond to an expert report.  So I think you should respond
20   by May 6.  And any reply by June 3.  Complete the expert
21   discovery by July 15th.  Take the depositions in June.
22   Submit a joint pretrial order to me on September 1.  And we can
23   have a final pretrial conference on September 9.
24           MR. FLEXNER:  There may be legally dispositive issues
25   that are --

9ch1amec

```
 1            THE COURT:  If there are, you'll write a letter to me
 2     when you believe the motion is ripe and we'll have a
 3     conference, and if I'm convinced that there's power to the
 4     motion and that it will dispose of everything, I might -- I
 5     might relieve you from preparing the joint pretrial order.  But
 6     only if I'm persuaded by the power of the argument.  But
 7     otherwise, we're going to move this case forward.  Trial dates
 8     bring clarity to a litigation like this, and it's been lacking
 9     in clarity, but now it's going to get some.
10            Now with respect to the briefing schedule on class
11     certification, the outside date is as we fixed, but I want to
12     have a conference in this case on April 2 -- Friday, April 2,
13     at which time we can discuss the status of the case.  If there
14     are any discovery disputes that arise in the meantime, follow
15     my individual practices and we'll arrange a conference.  I want
16     a status report for the April 2 conference submitted to me by
17     March 22, a joint letter advising me exactly what's going on
18     and what issues, if any, the parties want to raise at the
19     conference on April 2.
20            Do either of you think there's any need for a
21     conference before April 2 at this point just to discuss status?
22            MR. FLEXNER:  Why don't we think about that and talk
23     about it, and if we both think or either of us thinks it might
24     make sense, we'll write you a letter.
25            MR. FRIEDMAN:  I agree with that, your Honor, and I
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9ch1amec
1   just think that what might happen is coming back, seeking some
2   clarification, especially after there is a status of this other
3   case out there in Brooklyn, and we're going to talk to the
4   individual plaintiffs over there, and we might have some
5   questions about how all this works.
6           THE COURT:  But there's a dispositive motion sitting
7   over there, isn't there?
8           MR. FRIEDMAN:  There is, but Judge Garaufis also
9   stated that discovery moved -- his words were:  Will move right
10  away, will move straight ahead.  So --
11          THE COURT:  Well, has discovery been moving straight
12  ahead over there?
13          MR. FRIEDMAN:  Not a whit, and in fact, even the first
14  requests that I outlined for your Honor with those words, they
15  haven't moved to compel on those, so --
16          THE COURT:  All right.  What's happening with the
17  action before Judge Daniels?
18          MR. FLEXNER:  We're waiting, your Honor, for him to
19  either decide the motions or ask for argument.  They're ripe
20  for decision.  They're fully briefed.  They have been for some
21  time.
22          THE COURT:  All right.  Well, are there going to be
23  any other amendments to the pleadings?
24          MR. FRIEDMAN:  We do not foresee any.  We don't
25  foresee any.  But I've learned, in these cases, that to give
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

9ch1amec

1    ourselves an "amend by" date that's a little bit down the road
2    is only prudent.
3              THE COURT:  Well, then I'll include something in the
4    scheduling order.  June of next year is too far down the road.
5              MR. FLEXNER:  If they're going to amend, your Honor,
6    it should be before the discovery period expires.
7              THE COURT:  Yes.  That's true.  Well before.
8              MR. FLEXNER:  Well before.
9              THE COURT:  All right.  You've both agreed on June 1,
10   2010.  I'll incorporate that in the order.
11             Are there any other matters that the parties think
12   should be in the pretrial scheduling order?  Mr. Friedman,
13   anything?
14             MR. FRIEDMAN:  There is -- depends on how narrowly
15   your Honor makes the scheduling order, because oftentimes in
16   these orders, in the case management order, we'll have the --
17   we'll address the -- you've already addressed, of course, the
18   number of deposition hours.
19             There is the matter of number of interrogatories.  Now
20   the set of discovery that I spoke of earlier that we're ready
21   to serve today -- we'll serve Monday, I'm happy to show
22   opposing counsel today -- is heavy on the interrogatories.  We
23   think it's a very sufficient way to get data in this case.  We
24   actually think that the defendants will end up agreeing with
25   us.  But we would prefer not to be hemmed in by a specific

9ch1amec

1  number of interrogatories.  They're tools that get used and
2  lessen everybody's workload, I think, but if the defendants or,
3  most importantly, if your Honor doesn't agree with that, then
4  perhaps we should address the number of interrogatories.
5        THE COURT:  Well, the problem with that is that the
6  number of interrogatories is a very crude measuring device
7  because one interrogatory may take only a modicum of effort to
8  respond to and another may involve hundreds of hours of
9  someone's time.  So fixing a number is a crude measurement.  Do
10 you have any other suggestions?
11       MR. FRIEDMAN:  Just --
12       MR. FLEXNER:  I --
13       MR. FRIEDMAN:  Oh, I'm sorry.
14       MR. FLEXNER:  Go ahead.
15       MR. FRIEDMAN:  Mine was simply going to be
16 qualitative.  It's understood, it's going to be on the record
17 here today that if it's burdensome, if there's any sense by the
18 defendants that we're abusing the interrogatory device or it's
19 putting undue burdens on them, we understand -- we'll
20 understand that that would be unreasonable and they'll come
21 here and -- perhaps won't even need to.  They'll let us know.
22       THE COURT:  Maybe before they come here and they
23 express their view to you as to why it's unreasonable, you'll
24 withdraw it so that no one will have to come here.
25       MR. FRIEDMAN:  Right.  I would put it this way.  We'll

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

19

9ch1amec

 1  be very sensitized to the issue and we'll withdraw anything
 2  that's --
 3          THE COURT:  That's good, because you see the benefit
 4  for the judge who's going to try the case or decide the
 5  dispositive motions to supervise the discovery.
 6          MR. FLEXNER:  The suggestion I have, your Honor, we
 7  had proposed that the initial disclosure process contemplated
 8  by the rulings actually take place.  I think Mr. Friedman was
 9  of the view that we ought to dispose of those.  I think they're
10  a useful way to find out who's who, sort of the things that are
11  laid out in the initial disclosure, and I would propose
12  January 15.
13          MR. FRIEDMAN:  We have no objection to that.
14          THE COURT:  All right.  I'm going to require initial
15  disclosures be exchanged by January 15th.
16          With respect to the number of interrogatories, I think
17  the most appropriate resolution is for you to work together,
18  and if the defendant comes to the conclusion that plaintiffs'
19  requests are unreasonable for one reason or another and you
20  meet and confer and you're not able to resolve it, you'll
21  present it to me in a joint letter, we'll have a conference,
22  and I'll resolve the issue.  And I won't come to any
23  conclusions about the motives of one party or the other by
24  making such a request, but I just don't see that there's a
25  point in trying to fix a rule, because you could ask five
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

9ch1amec
```
 1  interrogatories and the defense might have an argument that it
 2  is oppressive, burdensome, or what have you.  Right?
 3          MR. FLEXNER:  Right.
 4          THE COURT:  All right.  What else do we need to
 5  address?  Anything from the plaintiffs?
 6          MR. FRIEDMAN:  No, your Honor.
 7          THE COURT:  Good.  Anything from the defendants?
 8          MR. FLEXNER:  Nothing else, your Honor.  Thank you.
 9          THE COURT:  All right.  I'll issue an order.  It will
10  embody the dates that I've set here today.  And I will also
11  advise Judge Garaufis.
12          MR. FLEXNER:  Thank you, your Honor.
13          THE COURT:  Have a good holiday.
14          MR. FRIEDMAN:  Thank you.  You too, your Honor.
15                            oOo
16
17
18
19
20
21
22
23
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300